UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THYRONE DESHAWN EVANS,

            Petitioner,                 Case No. 2:19-cv-11660
                                               Honorable Linda V. Parker

v.

JEFF TANNER,[1]

            Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Petitioner Thyrone Deshawn Evans, a Michigan Department of Corrections prisoner, filed a *pro se* application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following a jury trial in the Wayne County Circuit Court, Petitioner was convicted of second-degree murder in violation of Michigan Compiled Laws § 750.317; felon in possession of a firearm in violation of Michigan Compiled Laws § 750.224f; and possession of a firearm during the commission of a felony in violation of Michigan Compiled Laws § 750.227b.

---

[1] The caption is amended to reflect the proper Respondent in this case, the warden of the prison where Petitioner is currently incarcerated. *See Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *see also* Rules Governing § 2254 Case, Rule 2(a), 28 U.S.C. foll. § 2254.

Petitioner was sentenced as a fourth-offense habitual offender to concurrent prison terms of forty to sixty years for the murder conviction, sixteen to twenty years for the felon-in-possession conviction, and to a consecutive term of two years for the felony-firearm conviction.

In his habeas petition, Petitioner claims insufficient evidence supports his murder conviction, that the verdict fails against the great weight of the evidence, that his jury was improperly instructed, and that he was denied the opportunity to present a defense.  For the reasons that follow, the Court denies the habeas petition.

## I.    Facts and Procedural History

On September 30, 2013, Cleveland Dunklin, IV, was shot and killed on Braile Street in Detroit, after he had exchanged words with Petitioner earlier that day over Petitioner speeding through the neighborhood.  (Trial Tr., 9/3/14, ECF No. 9-6, Pg ID 883, 894, 1050); (Trial Tr., 9/7/14, ECF No. 9-7, Pg ID 1079-80, 1084).  A Wayne County Circuit Court jury convicted Petitioner on charges of second-degree murder, Michigan Compiled Laws § 750.317; felon in possession of a firearm, Michigan Compiled Laws § 750.224f; and possession of a firearm during the commission of a felony, Michigan Compiled Laws § 750.227b.  *People v. Evans*, No. 324460, 2016 WL 5405217, at *1 (Mich. Ct. App. Sept. 27, 2016).  Petitioner was sentenced as a fourth-offense habitual offender, Michigan Compiled Laws § 769.12, to concurrent prison terms of forty to sixty years for the murder

2

conviction and sixteen to twenty years for the felon-in-possession conviction; and a determinate two-year term for the felony-firearm conviction, to be served consecutively to the other sentences. *Id.*

The Michigan Court of Appeals summarized the trial testimony as follows:

The evidence indicated that the victim died as a result of a gunshot wound to his chest. Hershel Felder testified that he saw defendant shoot the victim as the victim walked away from defendant's car. Although Felder testified at trial that he did not see a gun, he previously testified that he saw a handgun come out of the window. Defendant also admitted firing a gun. Defendant's intent to kill can be inferred from his use of a deadly weapon. Although several witnesses either saw or heard another shooter, Felder testified that he saw defendant shoot the victim first. Additionally, Maurice Westley, Jamon Hawkins, and Dontanya Battle all heard a single shot before hearing a second set of shots. Battle saw the victim walk up to the driver's side of the red Charger before the shooting. Two types of shell casings were found at the scene, including some from defendant's weapon. The medical examiner could not say what type of bullet hit the victim. However, Westley saw the other shooter go behind the Charger and Hawkins saw the shooter on the passenger's side of the Charger, while Battle saw the victim on the driver's side of the Charger before the shooting. The damage observed on the Charger was on the back and passenger's side. Moreover, Hawkins saw the other shooter aiming downward at defendant's car, and the medical examiner testified that the path of the projectile that entered the victim was slightly upward.

Although Felder was a heroin user, he testified that he did not have heroin in his system on September 30, 2013, the night of the shooting. Also, while Felder gave inconsistent testimony and statements regarding what he saw and his location during the shooting, the jury was free to determine his credibility and the weight of his testimony. . . .

Defendant did not deny firing a weapon, but claimed that he acted in self-defense.

* * *

> Defendant testified that he fired his weapon after several shots were
> fired at his vehicle and that he did not aim at anyone. As previously
> discussed, however, there was ample evidence that defendant fired the
> first shot at the victim and, thus, that he did not fire his weapon in self-
> defense. There was also evidence of an earlier confrontation between
> defendant and the victim about defendant speeding, and that defendant
> came to Braile Street, the location of the shooting, with a gun.
> Moreover, defendant fled the scene after the shooting, there was no
> evidence that he went to the police, and he later lied to the police about
> the shooting.

*Id.* at *1-2. State courts' factual findings are presumed correct on habeas review.

28 U.S.C. § 2254(e)(1); *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

Additional facts will be reviewed below where they are pertinent to Petitioner's

claims.

Following his conviction, Petitioner appealed by right, claiming insufficient

evidence supported his second-degree murder conviction, that the verdict was

against the great weight of the evidence, that the jury instructions as given

deprived him of a fair trial, and that he was denied his right to present a defense

under several theories, including the trial court's refusal to appoint a firearms and

ballistics expert at public expense. In a divided opinion, the Michigan Court of

Appeals affirmed Petitioner's convictions. *Evans*, 2016 WL 5405217, at *11. The

dissenting judge would have "remand[ed] this case to the trial court to allow

defendant to obtain funds for retaining such an expert and, if he chooses, to move

for a new trial based upon the testimony or affidavit from such an expert." *Id*. at
*11 (Shapiro, J., dissenting).

The Michigan Supreme Court placed Petitioner's application for leave to
appeal in abeyance, pending the decision in *People v. Kennedy*, 502 Mich. 206
(2018), which addressed Michigan law governing the appointment of experts for
indigent criminal defendants. *People v. Evans*, 894 N.W.2d 544, 545 (Mich.
2017). After *Kennedy* was decided, the court "again considered" Petitioner's
application but denied leave to appeal in a standard form order. *People v. Evans*,
503 Mich. 884 (2018).

This timely habeas petition followed. Petitioner raises the same grounds for
relief he raised in the state appellate courts:

I.    Petitioner is entitled to entry of judgment for acquittal on the charge of
      second-degree murder as there was insufficient evidence.

II.   Petitioner is entitled to a new trial as the verdict is against the great
      weight of the evidence.

III.  Petitioner is entitled to a new trial as his jury was improperly instructed.

IV.   Petitioner is entitled to a new trial as he was denied his right to present a
      defense.

## II.    Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")
codified at 28 U.S.C. § 2241, *et seq*., sets forth the standard of review federal

courts must use when considering habeas petitions brought by prisoners

challenging their state court convictions. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it

'applies a rule that contradicts the governing law set forth in [Supreme Court

cases]' or if it 'confronts a set of facts that are materially indistinguishable from a

decision of [the Supreme] Court and nevertheless arrives at a result different from

[that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*,

535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of §

2254(d)(1) permits a federal habeas court to 'grant the writ if the state court

identifies the correct governing legal principle from [the Supreme] Court but

unreasonably applies that principle to the facts of petitioner's case." *Wiggins v.*

*Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*,

535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). In order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id.*; *see also White v. Woodall*, 572 U.S. 415, 419-20 (2014). Federal judges "are required to afford state

7

courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015).

Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fair-minded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Harrington*, 562 U.S. at 101. Because the requirements of clearly established law are to be determined solely by Supreme Court precedent, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48-49 (2012) (per curiam); *see also Lopez v. Smith*, 574 U.S. 1 (2014) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Nor does AEDPA "require citation of [Supreme Court] cases—

8

indeed, it does not even require awareness of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. Furthermore, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Harrington*, 562 U.S. at 98. Where the state court's decisions provide no rationale, the burden remains on the habeas petitioner to demonstrate that "there was no reasonable basis for the state court to deny relief." *Id*. However, when a state court has explained its reasoning, that is, "[w]here there has been one reasoned state judgment rejecting a federal claim," federal courts should presume that "later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Wilson v. Sellers*, 138 S. Ct. 1188, 1194 (2018) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.    Analysis

## A.  Sufficiency of the evidence

Petitioner argues first that insufficient evidence supports his convictions, specifically, that the prosecution failed to prove "causation and lack of justification."  (Pet., ECF No. 1, Pg ID 6.)  He admits he fired his weapon during the incident, but only after someone began shooting at him.  (*Id.*)  The state court of appeals disagreed.  *Evans*, 2016 WL 5405217, at *1.

"The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 309 (citing *In Re Winship*, 397 U.S. 358 (1970)).  Under AEDPA, however, a habeas court's "review of a state-court conviction for sufficiency of the evidence is very limited."  *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018).

Sufficiency-of-the-evidence claims "face a high bar in habeas proceedings because they are subject to two layers of deference[.]"  *Tackett v. Trierweiler*, 956 F.3d 358, 366 (6th Cir. 2020).  Direct appeal is the first layer, where the critical inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (citing *Jackson*, 443 U.S. at 319) (emphasis in original).  "This standard 'must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.'"  *Id.*  (quoting *Jackson*, 443 U.S. at 324, n. 16).

10

AEDPA provides the second layer of deference: "[O]n habeas review, a federal court may . . . overturn a state court decision . . . only if the state court decision was objectively unreasonable." *Tackett*, 956 F.3d at 367.

When evaluating sufficiency-of-the-evidence claims, the habeas court "is not at liberty to reweigh the evidence or reassess the credibility of witnesses." *Smith*, 962 F.3d at 205 (citing *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)). Habeas petitioners' "[a]ttacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence." *Id.* (quoting *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002)). Finally, it is the job of the factfinder at trial, not a federal habeas court, to resolve evidentiary conflicts. *Cavazos v. Smith*, 565 U.S. 1, 7 (2011); *Martin*, 280 F.3d at 618; *see also Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record— that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.").

Here, the state court of appeals "explicit[ly] refer[red]" to the elements of second-degree murder, as *Jackson* requires. *Smith*, 962 F.3d at 205. Those elements are

> (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. The term malice has been defined

11

> as the intent to kill, the intent to cause great bodily harm, or the intent
> to do an act in wanton and willful disregard of the likelihood that the
> natural tendency of such behavior is to cause death or great bodily
> harm.

*Evans*, 2016 WL 5405217, at *1 (citing *People v. Henderson*, 306 Mich. App. 1,

9–10 (2014)).

The appellate court listed the evidence supporting each element in turn. The

victim died from "a gunshot wound to his chest." *Id*. Witness Felder "testified

that he saw defendant shoot the victim as the victim walked away from defendant's

car." *Id*. "Defendant also admitted firing a gun[,]" which under Michigan case

law permits inference of an intent to kill and thus malice. *Id*. (citing *Henderson*,

306 Mich. App. at 11).

As to the element "without justification or excuse," Petitioner argued he shot

his gun in self-defense. *Id*. at *2. But Felder testified he saw Petitioner shoot the

victim first, which supported the jury's determination he was not acting in self-

defense. *Id*. at *1, *2. The court of appeals found further support for the jury's

conclusion in "evidence of an earlier confrontation between defendant and the

victim[,]" Petitioner's flight from the scene after the shooting, and his lies to police

about the incident.[2] *Id*. at *2.

---

[2] On direct examination, Petitioner admitted he lied to police about having a gun
in his possession, "about the gun falling in the car[,]" about "a person pointing
the gun at [him] through the window of the car[,]" "about [his] sister putting the
gun at the top of the refrigerator[,]" and about speeding off after the incident.
(Trial Tr., 9/11/14, ECF No. 9-11, Pg ID 1754, 1755, 1765.)

12

Petitioner argues in support of this claim of error that the state court of appeals "completely ignored" the causation element.  (Pet., ECF No. 1, Pg ID 6; Reply, ECF No. 10, Pg ID 2372.)  The Court disagrees.  The court expressly found that "[b]ased on Felder's testimony, in addition to the testimony of Westley, Hawkins, and Battle, the jury could find beyond a reasonable doubt that defendant shot the victim with malice, *causing his death*."  *Evans*, 2016 WL 5405217, at \*2 (emphasis added).

Petitioner also attacks the credibility of witness Felder, arguing "there wasn't an actual witness to this crime[,]" because the only witness who testified he saw Petitioner shoot the victim "is a drug user who told different stories at the preliminary examination and at trial."  (Reply., ECF No. 10, Pg ID 2370.)  The Michigan Court of Appeals addressed this argument, too, noting that "Defendant does not allege any 'exceptional circumstances' that would lead this Court to deviate from the general rule that 'issues of witness credibility are within the exclusive province of the trier of fact.'"  *Evans*, 2016 WL 5405217, at \*2 (citation omitted).  The appellate court properly applied *Jackson* when it acknowledged "Felder gave inconsistent testimony and statements regarding what he saw and his location during the shooting," but noted "the jury was free to determine his credibility and the weight of his testimony."  *Id.*

Applying the doubly deferential standard of *Jackson* and AEDPA, the Court finds the state courts' conclusions were not unreasonable. This Court may not "reweigh the evidence or reassess the credibility of witnesses." *Smith*, 962 F.3d at 205 (citation omitted). In addition, "the testimony of a single, uncorroborated prosecuting witness or other eyewitness is generally sufficient to support a conviction," so long as the prosecution presents evidence which establishes the elements of the offense beyond a reasonable doubt. *McClure v. Schroeder*, No. 20-CV-11337, 2021 WL 1696398, at *3 (E.D. Mich. Apr. 29, 2021) (Friedman, J.) (citing *Brown v. Davis*, 752 F.2d 1142, 1144-45 (6th Cir. 1985)). Here, in addition to the testimony of three other witnesses, the court of appeals listed evidence which could permit a jury to find beyond a reasonable doubt that Petitioner did not act in self-defense: Petitioner's altercation with the victim earlier the same day, his lies to police, and his flight from the neighborhood without contacting police. *Evans*, 2016 WL 5405217, at *2. Petitioner's own testimony that he fired his gun, demonstrating his malice or intent to kill, also supports the jury's conclusion. *See id.* at *1.

Petitioner has not demonstrated his convictions are unsupported by sufficient evidence, and he is not entitled to relief on this claim.

**B. Whether the verdict is against the great weight of the evidence**

Next, challenging a conviction as being "against the great weight of the evidence" is a state law issue, and is thus not cognizable in habeas.  In Michigan, a motion for "a new trial may be granted if the verdict is against the great weight of the evidence."  *People v. Lemmon*, 456 Mich. 625, 635 (1998).  Because this is a state rule or law, "[a] federal habeas court . . . has no power to grant habeas relief on a claim that a state conviction is against the great weight of the evidence." *Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *see also Nash v. Eberlin*, 258 F. App'x 761, 764 n.4 (6th Cir. 2007) (noting that "a manifest-weight-of-the-evidence argument is a state-law argument").  Accordingly, the test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether the evidence was constitutionally sufficient to support the verdict.  *Avery v. Horton*, No. 2:20-CV-12339, 2021 WL 2592958, at *2 (E.D. Mich. June 24, 2021) (Drain, J.) (citing *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002)).

Petitioner contends he "is not asking the [C]ourt to act as a 'thirteenth juror,'" but contradicts that assertion by asking the Court to "view the entire record and conclude that . . . a strong potential exists that an innocent man was convicted of these serious charges . . ."  (Pet., ECF No. 1, Pg ID 9.)  For the reasons articulated in the prior section, the Court cannot perform the requested review; it cannot reweigh the evidence or reassess witness credibility.  *Smith*, 962 F.3d at

205; *see also Parker v. Matthews*, 567 U.S. 37, 43 (2012). However, the Court has

performed an AEDPA-compliant review of the record. It finds the appellate

court's decision was not objectively unreasonable. *Tackett*, 956 F.3d at 367.

Finally, Petitioner notes in his Reply brief that he "agrees with the

Respondent's argument that this argument is non-cognizable but also similar to

Ground I regarding the sufficiency of the evidence." (Reply, ECF No. 10, Pg ID

2374.) The Court has already explained that sufficient evidence supports

Petitioner's conviction. For that reason, and again, because this is a state law

issue, Petitioner is not entitled to habeas relief on his claim that the verdict was

against the great weight of the evidence.

## C. Improper jury instructions

Petitioner's next issue is that he was denied a fair trial due to errors in the

jury instructions. Generally, "[w]here the trial court instructs the jury in

accordance with state law and sufficiently addresses the matters of law at issue, no

error results and the petitioner is not entitled to habeas relief." *White v. Mitchell*,

431 F.3d 517, 534–35 (6th Cir. 2005) (citing *Sanders v. Freeman*, 221 F.3d 846,

860 (6th Cir. 2000)). Even an allegation that a jury instruction was incorrect under

state law is not a basis for federal habeas relief. *Ambrose v. Romanowski*, 621 F.

App'x 808, 813 (6th Cir. 2015) (citing *Estelle v. McGuire*, 502 U.S. 62, 71–72

(1991); *Byrd v. Collins*, 209 F.3d 486, 527 (6th Cir. 2000)).

16

Rather, "a habeas petitioner's claimed error regarding 'jury instructions must be so egregious that [it] render[ed] the entire trial fundamentally unfair. Without such a showing, no constitutional violation is established and the petitioner is not entitled to relief.'" *Wade v. Timmerman-Cooper*, 785 F.3d 1059, 1078 (6th Cir. 2015) (quoting *White*, 431 F.3d at 533) (alterations in original). "It is not enough that the instruction [is] 'undesirable, erroneous, or even universally condemned.'" *Ambrose*, 621 F. App'x at 813 (citing *Estelle*, 502 U.S. at 72) (internal quotation marks omitted). As a result, the question on habeas review is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id*. (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Estelle*, 502 U.S. at 72). Courts must consider such claims "not . . . in artificial isolation," but in the context of all the instructions and the trial record as a whole. *Cupp*, 414 U.S. at 147.

The instructions Petitioner challenges fail under these standards. First, he argues that a "false exculpatory statement" instruction, which permits viewing a false statement as circumstantial evidence of guilt, should have applied only to his felony firearm and felon-in-possession charges, and not his second-degree murder conviction, because he was unaware anyone had been shot or killed when he gave his false statement to police. (Pet., ECF No. 1, Pg ID 12.) He also argues the jury should have been instructed that he had no duty to retreat. (*Id*.) Finally, Petitioner

argues a "flight" instruction, which permits finding a consciousness of guilt under certain circumstances, should not have been given.

The Michigan Court of Appeals found none of Petitioner's arguments had merit. *Evans*, 2016 WL 5405217, at *4. Evaluating the instructional challenges against Michigan case law, it held Petitioner had not met his burden of establishing the errors "resulted in a miscarriage of justice." *Id.* (citing *People v. Guajardo*, 300 Mich. App. 26, 34 (2013)). In addition, it implicitly found the challenged instructions "fairly presented the issues to be tried and adequately protected defendant's rights." *Id.* (citing *People v. Henderson*, 306 Mich. App. 1, 4 (2014)). The court also analyzed each instructional challenge in detail. *Id.* at *5-*8.

Reviewing the instructions and trial record as a whole as the Court must, *Cupp*, 414 U.S. at 147, it finds the state court's rejection of Petitioner's jury instruction claims was not unreasonable. First, Petitioner's disputed application of his "false exculpatory statement" was not the kind of egregious error which would render the entire trial unfair. *Wade*, 785 F.3d at 1078. While Petitioner argues that the instruction should not have been applied to the murder charge because he did not know of the murder when he lied to the police, the state court rationalized that "the jury could have disbelieved defendant, and found that defendant intentionally shot the victim and, thus was trying to exculpate himself of any crime related to the shooting when he made the false statements." *Evans*, 2016 WL 5405217, at *5.

18

Additionally, Petitioner admitted that he fired his weapon, which was contrary to his statement to the police that he was not in possession of a weapon. Nor was the "flight" instruction, which permits a jury to consider as evidence of a defendant's consciousness of guilt his departure from the location of the alleged offense or hiding afterward. *Evans*, 2016 WL 5405217, at \*8.

Petitioner's claims regarding instructions on self-defense and the related duty to retreat present a closer call, because criminal defendants possess a constitutional right "to present a complete defense," *Keahey v. Marquis*, 978 F.3d 474, 478 (6th Cir. 2020), *cert. denied*, 142 S. Ct. 69 (2021) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)). *Keahey* began its analysis by noting that generally, jury instruction errors "'may not form the basis for federal habeas relief.'" *Id.* at 478 (quoting *Gilmore v. Taylor*, 508 U.S. 333, 344 (1993)). A habeas petitioner must show that such errors "violated clearly established United States Supreme Court decisions." *Id.*

In *Keahey*, the petitioner claimed the state trial court's refusal to instruct the jury on self-defense violated his Sixth and Fourteenth Amendment rights. *Id.* at 477. The *Keahey* court reviewed the Supreme Court's "complete defense" jurisprudence following the *Crane* decision. It noted the Court did reach jury instruction issues such as lesser-included-offense instructions for capital defendants as well as inconsistent jury instructions. *Id.* at 478 (citing *Beck v.*

*Alabama*, 447 U.S. 625 (1980); *Stevenson v. United States*, 162 U.S. 313 (1896)).

However, "the Court has never invoked this principle to 'squarely establish[]' a

federal right to a self-defense instruction." *Id.* (quoting *Knowles v. Mirzayance*,

556 U.S. 111, 122 (2009)) (alteration in original).  As a result, it found the

petitioner "ha[d] not shown that the state appellate court's decision was 'contrary

to' clearly established Supreme Court precedent." *Id.*

As *Keahey* observed, no "clearly established Federal law" applies to

Petitioner's self-defense instruction challenge.  And as explained above, none of

the other instructions Petitioner challenges rendered his trial fundamentally unfair.

Petitioner is not entitled to habeas relief on these claims.

## D. Denial of the right to present a defense

Finally, Petitioner advances several challenges under the umbrella claim that

he was denied his right to present a defense.  Specifically, Petitioner argues that

> (1) the trial court denied his pretrial motion for appointment of a ballistics
> and firearm expert at the state's expense, (2) the trial court refused to allow
> defense counsel to ask questions about whether this case involved a drug
> dispute, (3) the trial court refused to allow the decedent's father to testify
> that he had no knowledge of a person named Tone selling drugs or his wife
> using drugs, (4) the prosecutor badgered [Petitioner] and attacked his
> credibility, (5) the trial court denied his motion for a mistrial and refused to
> allow defense counsel to impeach Felder with his prior testimony, (6) the
> trial court denied some of defense counsel's objections without hearing the
> substance of the objections, and (7) the trial court refused to allow defense
> counsel to approach the bench and lodge an objection, but allowed the
> prosecutor to approach shortly thereafter, and (8) the trial court's instruction
> of the jury further denied him of the opportunity to present a defense.

20

(Pet., ECF No. 1, Pg ID 14.)  The state court of appeals disagreed.  *Evans*, 2016 WL 5405217, at *8.

On the issue of Petitioner's request for a ballistics expert, the court of appeals held that he failed to "explain how the trial court's ruling was erroneous, or how he was denied the right to present a defense."  *Id.* at *9.  The dissent noted it would have remanded the issue to the trial court, observing that by seeking an expert "in order to understand the science[,] . . . defense counsel established a sufficient nexus between the facts and the need for the appointment of an expert."  *Id.* at *11.  Unfortunately for Petitioner, even if he established such a nexus, he is not entitled to habeas relief on this issue.

The Supreme Court has found only one context in which due process requires a trial court to appoint an expert on an indigent criminal defendant's behalf.  In *Ake v. Oklahoma*, the Court held that "when a defendant has made a preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial, the Constitution requires that a State provide access to a psychiatrist's assistance on this issue if the defendant cannot otherwise afford one."  470 U.S. 68, 74 (1985).  As another court in this district recently observed,

> the Supreme Court "has not yet extended *Ake* to non-psychiatric experts."  *Conklin v. Schofield*, 366 F.3d 1191, 1206 (11th Cir. 2004); s*ee also Hawkins v. Mullin*, 291 F.3d 658, 671 n. 6 (10th Cir. 2002) ("Although this court has extended *Ake* to the State's provision of investigators and other experts as well, the Supreme Court has not specifically done so") (citations omitted); *McGowan v. Winn*, No. 17-

21

2000, 2018 WL 1414902, at *2 (6th Cir. Mar. 21, 2018) ("Because the Supreme Court has not extended *Ake* to non-psychiatric experts, the rejection of [petitioner's] claim is not contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court").

*Bergman v. Brewer*, 542 F. Supp. 3d 649, 663 (E.D. Mich. 2021), *amended on denial of reconsideration*, No. 17-CV-13506, 2021 WL 4389277 (E.D. Mich. Sept. 24, 2021) (expanding the grant of a certificate of appealability, *id.* at *5).

As *Bergman* explains, no "clearly established federal law" mandates appointment of non-psychiatric experts; therefore, federal habeas relief is not available for a state court's failure to appoint an expert in any other field of expertise.  *Id.*  While Petitioner might have benefited from appointment of a ballistics expert to aid his defense, "AEDPA precludes this Court from granting . . . habeas relief."  *Id.*

Nor do any of Petitioner's other claims regarding his right to present a defense entitle him to relief.  None of the Supreme Court precedents on which Petitioner relies for these claims meet AEDPA's criteria for "clearly established law."  Petitioner cites *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006), *Crane*, 476 U.S. at 690, and *Chambers v. Mississippi*, 410 U.S. 384, 302 (1973), in support of his constitutional right to present a complete defense and to present evidence in his defense.  *See* (Mich. Ct. App. Rec., ECF No. 9-15, Pg ID 2173; Mich. Sup. Ct. Rec., ECF No. 9-16, Pg ID 2311.)  While all generally address the

22

rights in question, none are sufficiently specific to demonstrate his entitlement to relief.  That is, to obtain habeas relief, a petitioner must "identif[y] [a] decision from this Court directly on point[;]" it cannot merely be "similar to" Supreme Court precedent.  *Woods v. Donald*, 575 U.S. 312, 317 (2015) (per curiam).  "Because none of [the Supreme Court] cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court."  *Id*.  (quoting *Lopez*, 135 S. Ct. at 4).

As to Petitioner's specific issues, the Court has already explained that his assertion of instructional errors lacks merit.  So do his complaints about the trial court's denial of defense counsel's objections, as a constitutional violation occurs only when a judge's rulings or statements show "a predisposition so extreme as to display clear inability to render fair judgment."  *Johnson v. Bagley,* 544 F.3d 592, 597 (6th Cir. 2008).  Petitioner's citation of two incidents, *see* Mich. Ct. App. Rec., ECF No. 9-15, Pg ID 2232-33, in support of this claim does not establish his right to a fundamentally fair trial was violated by the court's rulings.

Finally, Petitioner complains the defense was not permitted to impeach witness Felder adequately, and that the trial court wrongfully refused his motion for a mistrial on that basis.  On this issue, the court of appeals held that Petitioner failed to establish plain error because he "fail[ed] to explain how the trial court's

evidentiary ruling or ruling on his motion for a mistrial was erroneous, or how he was denied the right to present a defense." *Evans*, 2016 WL 5405217, at \*10.

The Confrontation Clause protects a criminal defendant's right to impeach a witness for "both bias and credibility[,]" *Vasquez v. Jones*, 496 F.3d 564, 571-72 (6th Cir. 2007). However, Petitioner did not raise a Confrontation Clause violation in the state courts, so "the legal basis for this distinct claim was not fairly presented to the state courts." *Peterson v. Smith*, 510 F. App'x 356, 366 (6th Cir. 2013) (citing *Hicks v. Straub*, 377 F.3d 538, 552 (6th Cir. 2004)). Despite that, the *Peterson* court determined that the petitioner's right of confrontation was not denied. *Id.* So, too, here.

"[W]hen 'it is merely the extent of cross-examination that is limited, the trial judge retains a much wider latitude of discretion. Once cross examination reveals sufficient information to appraise the witness' veracity, confrontation demands are satisfied.'" *Couturier v. Vasbinder*, 385 F. App'x 509, 514–15 (6th Cir. 2010) (quoting *Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000)). When a court limits witness impeachment, "the inquiry for the reviewing court is 'whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory.'" *Id.* at 515 (quoting *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir.2007)); *accord*, *Peterson*, 510 F. App'x at 366 (citing *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989)).

24

The record refutes Petitioner's complaint the trial court completely prevented defense counsel from impeaching witness Felder with his prior testimony. The jury heard Felder testify during direct examination that he saw Petitioner's shoulder move, but did not actually see a gun. (Trial Tr., 8/27/2014, ECF No. 9-4, Pg ID 483.) On cross, it heard he previously testified he saw a hand with a gun in it extend from the driver's side of the car. (*Id.* at Pg ID 619-20.) Defense counsel was also able to demonstrate Felder's inconsistent testimony on whether he used heroin, where he was standing during the incident and with whom, and where Petitioner's vehicle was located during the shooting. (*Id.* at Pg ID 526, 536, 577-79, 602, 605, 607.) Accordingly, the jury had ample evidence from which to evaluate Felder's credibility. *Couturier*, 385 F. App'x at 514–15.

Moreover, the court's limits on the cross-examination of Felder were harmless under the federal habeas standard. The proper inquiry under that standard is whether the violation "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at 515 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993)). The habeas court must evaluate

> the factors laid out in *Van Arsdall*, which "include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."

*Id.* (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

Three witnesses other than Felder "all heard a single shot before hearing a second set of shots[,]" *Evans*, 2016 WL 5405217, at *1, which supported the prosecution's case that Petitioner shot first, not after he had been shot at as he testified. Other evidence, including the path of the bullet wound in the victim, the shooting damage on Petitioner's vehicle, and witnesses' statements regarding the position of the second shooter in relation to the vehicle and the victim's location, *id.*, further corroborated the "material point[]" of Felder's testimony, that Petitioner shot the victim. Therefore, even if the trial court's limits on cross-examination of Felder infringed on Petitioner's right of confrontation (and the Court has concluded they did not), the error was harmless.

For all the reasons stated above, Petitioner was not denied his right to present a complete defense. He is not entitled to habeas relief on this issue.

## E. Certificate of appealability and *in forma pauperis* status on appeal

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A federal district court must decide whether to issue a certificate of appealability when it issues a ruling on the habeas petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To demonstrate such a denial, a petitioner must show that

26

reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

For the reasons stated in this opinion, the Court is denying Petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right.  Reasonable jurists would not find it debatable whether Petitioner was denied due process or a fair trial.  However, because an appeal could be made in good faith, the Court will grant Petitioner leave to appeal *in forma pauperis*.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

### IV.    Conclusion and Order

For the reasons stated above, the Court concludes Petitioner is not entitled to federal habeas relief on his claims.

Accordingly,

**IT IS ORDERED** that the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

**IT IS FURTHER ORDERED** that the Court **DENIES** a certificate of

appealability, but **GRANTS** leave to proceed *in forma pauperis* on appeal.

      **IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: February 14, 2023


I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, February 14, 2023, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager